## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHELE LEE PACHECO,

       Plaintiff,

v.                                                              CIV. NO. 13-848 GBW

CAROLYN W. COLVIN, *Acting*
*Commissioner of the Social Security*
*Administration*,

       Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

This matter comes before the Court on Plaintiff's Motion and Memorandum to Reverse or Remand the Social Security Administration's (SSA) decision to deny Plaintiff disability insurance benefits. *Docs. 23, 24.* For the reasons discussed below, the Court GRANTS Plaintiff's motion and REMANDS this action to the Commissioner for further proceedings consistent with this opinion.

### I.    PROCEDURAL HISTORY

Plaintiff filed her Title II and XVI applications for disability insurance benefits and supplemental security income in May 2009. AR at 18. She alleged disability beginning on November 5, 2008, on the basis of "depression, PTSD, anxiety, fibromyalgia, osteoarthritis, [high blood pressure], hypothyroidism, acid reflux, sleep apnea, asthma and obesity." AR at 18, 72. Plaintiff's claims were initially denied on November 24, 2009, and upon reconsideration on August 10, 2010. AR at 18, 73, 81.

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Michelle K. Lindsay on February 9, 2012, in Santa Fe, New Mexico.  AR at 18.  A vocational expert, Mary Diane Weber, also attended the hearing, as well as Plaintiff's counsel, Helen Laura Lopez.  AR at 18.

The ALJ issued an opinion on March 26, 2012, finding that Plaintiff had "not been under a disability within the meaning of the Social Security Act from November 5, 2009, through the date of th[e] decision."  AR at 18, 27.  In determining whether Plaintiff was entitled to benefits, the ALJ applied the sequential five-step analysis as required by Social Security Administration (SSA) regulations.  20 C.F.R. §§ 404.1520, 416.920.  Plaintiff appealed the ALJ's decision to the SSA Appeals Council and submitted new evidence in support of her claim.  On August 2, 2013, the Appeals Council denied Plaintiff's request for review, finding that the additional evidence "[did] not provide a basis for changing the Administrative Law Judge's decision" and denied Plaintiff's appeal.  AR at 1-2.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'"  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.   PLAINTIFF'S MEDICAL HISTORY

Plaintiff is a 40-year-old woman alleging disability on the basis of "depression, PTSD, anxiety, fibromyalgia, osteoarthritis, [high blood pressure], hypothyroidism, acid reflux, sleep apnea, asthma and obesity." AR at 72.

Plaintiff began seeing Dr. Misbah Zmily, M.D., at La Familia Primary Care in 2005, where she was treated for numerous medical conditions. AR at 164. Dr. Zmily prescribed Plaintiff Levoxyl, Lisinopril, Zyrtec, Prilosec, and Darvocet, and Xanax. AR at 278-79.

Plaintiff was hospitalized for abdominal pain at Miners' Colfax Medical Center

from August 12, 2008, to August 14, 2008.  AR at 276-77.  Dr. Zmily performed a CT examination of Plaintiff's abdomen and pelvis on August 12, 2008, and indicated his impression that there was "[n]o obvious acute abnormality identified."  AR at 267.  A gallbladder sonography conducted the subsequent day also came back normal.  AR at 268.  Plaintiff was prescribed antibiotics and scheduled for an upper GI examination.  AR at 277.  Dr. Zmily diagnosed abdominal pain, urinary tract infection, hypertension, depression, and low back pain.  AR at 276.  On August 22, 2008, Plaintiff had an upper GI examination and was diagnosed with abdominal pain.  AR at 256.  Dr. Zmily recorded his impression of "[s]mall sliding type hiatus hernia with prominent reflux."  AR at 256.

Plaintiff saw Dr. Zmily again on September 2, 2008, and was assessed with fibromyalgia.  AR at 283.  In October 2008, Dr. Zmily documented that Plaintiff suffered from bipolar disorder, depression, PTSD, osteoarthritis, gastroesophageal reflux disease, hypertension, and hyperthyroidism.  AR at 282.

Plaintiff first saw her treating psychiatrist, Dr. Margaret Conolly, M.D., on September 17, 2008.  AR at 164, 328-330.  During her psychiatric evaluation, Plaintiff reported that she was "[n]ot functioning the way [she] used to," and informed Dr. Conolly that she had been hospitalized for depression for three days in August.  AR at 328-29.  Dr. Conolly assessed that Plaintiff had a "long [history] of recurrent major depressive episodes [and was] currently severely depressed."  AR at 328, 330.  She found that Plaintiff had a mood disorder, a panic disorder, fibromyalgia, hyperthyroidism,

gastroesophageal reflux, and osteoarthritis.  AR at 330.  She also assessed Plaintiff with a

Global Assessment of Functioning (GAF) score of 45, indicating "[s]erious symptoms . . .

[or] any serious impairment in social, occupational, or school functioning . . . ."  AR at

330; AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF

MENTAL DISORDERS 34 (4th ed. 2000) [hereinafter DSM-IV].  Dr. Conolly provided Plaintiff

with trial prescriptions of Alprazolam, Clonazepam, and Abilify.  AR at 330.  On

September 29, 2008, she prescribed Plaintiff Clonazepam and Abilify.  AR at 327.

On November 5, 2008, Plaintiff went to the emergency room at Miner's Colfax

Medical Center complaining that she was "having a nervous breakdown."  AR at 249,

256.  She "present[ed] to ER crying, anxious," and stated that she was "under a lot of

stress lately."  AR at 249.  The physician, Dr. Zmily, noted that Plaintiff was taking

Alprazolam, Risperdal, Cetirizine, Clonazepam, Propoxyphene/Acetaminophen,

Levothyroxine, and Ranitidine.  AR at 256.  The discharge impression was "severe

depression; PTSD; morbid obesity."  AR at 250; *accord* AR at 256.

Plaintiff continued to see Dr. Conolly on a regular basis.  In late 2008 and early

2009, Plaintiff reported that she was "tired all the time" due to her fibromyalgia and

could not work because of her fatigue.  AR at 323-24.  Dr. Conolly increased Plaintiff's

prescription for Abilify in November and December 2008, and began prescribing her

Cymbalta in January 2009.  AR at 322, 324-25.  In early 2009, Dr. Conolly observed that

Plaintiff was "doing well in school" and "feeling better [and] less depressed."  AR at 320-

21.

On April 1, 2009, Dr. Conolly noted that Plaintiff had been diagnosed with sleep apnea. AR at 319. Plaintiff had undergone a sleep study with Dr. Craig Shapiro, M.D., at Miners' Colfax Medical Center in February 2009. AR at 243. Dr. Shapiro's impression was "[m]oderate obstructive sleep apnea," which he suggested treating with a sleeping mask. AR at 244.

Plaintiff saw Dr. Conolly again on May 13, 2009. AR at 318. Plaintiff reported that she "decided to drop" the class she was taking. AR at 318. She informed Dr. Conolly that she had become anxious and had broken out in hives. AR at 318. Dr. Conolly noted on June 10, 2009, that Plaintiff's "anxiety [was] high," and she increased Plaintiff's Clonazepam prescription. AR at 317. Dr. Conolly discontinued the Abilify prescription at Plaintiff's request on June 29, 2009. AR at 316.

After Plaintiff's uncle died in August 2009, Plaintiff reported "feeling very sad" and being "more tried than usual." AR at 400-01. She started taking classes again, but noted that class was challenging and she "usually sleeps . . . ." AR at 400. In September 2009, Dr. Conolly refilled Plaintiff's prescriptions for Cymbalta and Clonazepam and started her on Effexor. AR at 399. In December 2009, Plaintiff was "still depressed and anxious" and was "sleeping 14-15 [hours a] day." AR at 396. Dr. Conolly increased Plaintiff's Effexor prescription and refilled her Clonazepam prescription. AR at 396. In March 2010, Plaintiff reported that she "still has pain which affects mood." AR at 394.

Consequently, Plaintiff's "husband and daughter take care of [the] home." AR at 394. On

April 23, 2010, Plaintiff said that she was "doing better," but had been "very sad last

week" when her PTSD was triggered. AR at 393. Dr. Conolly renewed Plaintiff's Effexor

and Clonazepam prescriptions, noting that she had a "[g]ood clinical response." AR at

393.

      Plaintiff continued to be treated by Dr. Zmily at La Familia Primary Care for her

medical conditions throughout 2009 and 2010. In January 2009, Plaintiff reported that she

was "tired all the time." AR at 289. On May 22, 2009, Plaintiff had an ultrasound

examination of her right leg after experiencing pain and swelling. AR at 271. The

ultrasound revealed that Plaintiff was "[n]egative for deep venous thrombosis . . . ." AR

at 271.

      In July 2009, Plaintiff was taking the following medications: Levoxyl, Prilosec,

Percocet, Klonopin, Cymbalta, Neurontin, Lisinopril, and Zyrtec. AR at 292. On July 27,

2009, Plaintiff underwent an ultrasound examination of her right upper quadrant. AR at

312. The physician's impressions included "[e]chodense liver suggesting a degree of

diffuse hepatocellular disease." AR at 312.

      Dr. Jill Blacharsh, M.D., prepared a Psychiatric Review Technique form for

Plaintiff in October 2009. AR at 337-350. She assessed Plaintiff with a mood disorder and

a panic disorder. AR at 340-342. She further concluded that Plaintiff had only mild

restriction in daily activities, mild difficulties in maintaining social functioning, and mild

difficulties in maintaining concentration, persistence, or pace.  AR at 347.

Shortly thereafter, on November 16, 2009, Plaintiff was examined by Dr. Martin Trujillo, M.D.  AR at 351-53.  Dr. Trujillo noted that Plaintiff was diagnosed with fibromyalgia "in August 2008 after a five-year history of muscle and joint paints along with headaches."  AR at 351.  He also noted Plaintiff's history of depression and anxiety. At the time of her examination, Plaintiff was taking "Percocet . . ., Effexor, lisinopril/HCTZ, Norvasc, clonazepam, levothyroxine, Prilosec, gabapentin, Zyrtec and alprazolam."  AR at 351.  After conducting a physical examination, Dr. Trujillo recorded his impressions of morbid obesity, hypertension, hypothyroidism, depression/anxiety, posttraumatic stress disorder, gastroesophageal reflux disease, degenerative joint disease of weight-bearing joints, sleep apnea with minimal hypoxemia, chronic obstructive pulmonary disease related to her obesity, and basic metabolic syndrome.  AR at 353.  He concluded that Plaintiff was "limited in ambulation and physical stamina" and found that she was "a poor candidate for routine employment, although should do well returning to school."  AR at 353.

That same month, on November 21, 2009, Dr. Janice Kando, M.D., a medical consultant, completed a physical residual functional capacity (RFC) assessment of Plaintiff.  AR at 385-392.  She found that Plaintiff could lift 20 pounds occasionally, could lift 10 pounds frequently, could stand and/or walk for a total of 2 hours in an 8-hour workday, and could sit for about 6 hours in an 8-hour workday.  AR at 386.  Unlike Dr.

Trujillo, Dr. Kando found "no evidence that [Plaintiff was] a poor candidate for routine employment." AR at 391. A case analysis completed by N. D. Nickerson, M.D., on July 15, 2010, affirmed the prior RFC. AR at 409.

On August 2, 2010, Elizabeth Chiang, M.D., filled out a psychiatric review technique and a mental RFC assessment. AR at 410-27. She concluded that Plaintiff had "Bipolar II Disorder" and "Panic Disorder w/ agoraphobia, PTSD." AR at 417, 419. Dr. Chiang found that Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. AR at 424. In addition, she found that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, and to maintain attention and concentration for extended periods. AR at 410. Finally, Dr. Chiang found that Plaintiff was moderately limited in her ability to interact appropriately with the general public, to get along with coworkers and peers, and to respond appropriately to changes in the work setting. AR at 411. She concluded that Plaintiff "would benefit from a work environment with well defined expectations and limited interpersonal interactions." AR at 412.

Plaintiff saw Dr. Conolly again on December 22, 2011. AR at 438-40. Plaintiff explained that she felt "overwhelmed by stresses" and had about one panic attack per day that lasted for a few minutes. AR at 438. Plaintiff also had depressive episodes and low energy and motivation. AR at 438. Dr. Conolly assessed Plaintiff with PTSD and bipolar disorder, and gave her a GAF score of 35, indicating "[s]ome impairment in

reality testing or communication . . . [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ."  AR at 440; DSM-IV at 34. In January 2012, Dr. Conolly prescribed Plaintiff Lamotrigine, and in February 2012, Dr. Conolly assessed Plaintiff with "[m]ild depression."  AR at 434, 436.

Finally, Plaintiff saw Dr. Gilbert Aragon, D.O., on April 20, 2012, a few weeks after the ALJ issued her opinion denying Plaintiff's request for benefits.  AR at 442.  Dr. Aragon found that Plaintiff could occasionally and frequently lift and/or carry less than 10 pounds, could stand and/or walk for a total of less than 2 hours in an 8-hour workday, and could sit for less than 6 hours in an 8-hour workday.  AR at 442.  Further, he concluded that Plaintiff had to periodically alternate sitting and standing, and had to periodically lie down during the day.  AR at 442.

## IV.   THE ALJ'S DECISION

On March 26, 2012, the ALJ issued a decision denying Plaintiff's application for benefits.  AR at 15.  For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. §

404.1520.   If the Commissioner finds an individual disabled at one step, the next step is

not taken.  *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show that: (1)

he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and that either (3) his impairment(s) meet or equal

one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work."  416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257,

1261 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity

in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  A

claimant's RFC is "the most [he] can still do despite [his physical and mental]

limitations."  *Id*. § 404.1545(a)(1).  Second, the ALJ determines the physical and mental

demands of claimant's past work.  "To make the necessary findings, the ALJ must obtain

adequate 'factual information about those work demands which have a bearing on the

medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting Social Security

Ruling 82-62 (1982)).  Third, the ALJ determines whether, in light of his RFC, the claimant

is capable of meeting those demands.  *Id*. at 1023, 1025.

If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

Here, in making her decision to deny Plaintiff's request for benefits, the ALJ applied the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of November 5, 2008. AR at 20. At step two, the ALJ determined that Plaintiff had the following severe impairments: "fibromyalgia, degenerative joint disease of the weight bearing joints, obesity, sleep apnea, chronic obstructive pulmonary disease, hypertension, bipolar disorder and posttraumatic stress disorder (PTSD)." AR at 20. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR at 21. Before proceeding to step four, the ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform sedentary work. AR at 22. She found that:

> [Plaintiff] can lift, carry, push and pull ten (10) pounds. She can sit six hours out of an eight-hour workday and stand/walk two hours out of an eight-hour workday. She can perform occasional postural activities such as climbing stairs and ramps, balancing, stooping, crouching, kneeling and crawling; however, she can never climb ropes, ladders or scaffolds. She must avoid concentrated exposure to extreme cold, pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation and avoid unprotected heights.

AR at 22-23.  With respect to non-exertional limitations, the ALJ found that Plaintiff "is able to understand, remember and carry out simple and detailed instructions, but not complex instructions.  She is able to maintain attention and concentration to perform simple tasks for two-hours at a time without redirection of tasks with only occasional contact with the general public."  AR at 23.

At step four of the analysis, the ALJ concluded that, in light of her RFC, Plaintiff was unable to perform her past relevant work as a bookkeeper, teller, fast food shift supervisor, or administrative assistant.  AR at 25.  Finally, at the fifth and final step, the ALJ determined that Plaintiff was not disabled because she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," namely as an addresser, final assembler, or table worker.  AR at 26.

V.    ANALYSIS

Plaintiff argues that the Commissioner erred by (1) failing to give appropriate weight to the opinions of Plaintiff's treating and examining physicians, (2) failing to perform a step three analysis for joint dysfunction, (3) improperly evaluating Plaintiff's RFC, and (4) improperly assessing Plaintiff's credibility.

The Court finds that the ALJ erred in evaluating Plaintiff's treating and examining physicians' opinions, and will therefore remand this case to the Commissioner for further proceedings consistent with this opinion.  Given this error, Plaintiff's other arguments are not addressed in this opinion.

A.  **The Commissioner Erred in Evaluating the Opinions of Plaintiff's Physicians.**

Plaintiff argues that the Commissioner erred by assigning insufficient weight to the opinions of her examining physicians Dr. Aragon, Dr. Conolly, and Dr. Trujillo. Plaintiff first contends that the Appeals Council improperly denied review of the ALJ's decision in light of the new evidence, which consisted of Dr. Aragon's physical residual functional capacity questionnaire.  *Doc. 26* at 3-5.  Additionally, Plaintiff claims that the ALJ erred by assigning limited weight to the opinions of Dr. Conolly and Dr. Trujillo.

1.  *The Appeals Council did not err in its consideration of Dr. Aragon's RFC.*

Dr. Aragon, Plaintiff's treating physician, completed a form assessing Plaintiff's physical residual functional capacity on April 20, 2012 (AR at 442), several weeks after the ALJ issued her decision.  Plaintiff contends that the Commissioner did not properly consider this opinion at the Appeals Council level.

The Social Security Administration regulations provide that the Appeals Council shall consider "new and material evidence . . . only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted . . . [and will] review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§ 404.970, 416.970.  If the Appeals Council indicates that it has, in fact, considered new

evidence, then this evidence becomes part of the record to be reviewed by the district court.  *See, e.g., Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

Here, the Appeals Council indicated that Dr. Aragon's RFC had been made part of the record, and confirmed that it had "considered . . . the additional evidence."  AR at 1, 5; *see also Blea v. Barnhart*, 466 F.3d 903, 912 n.2 (10th Cir. 2006) (taking Appeals Council "at its word" when it said it had considered evidence submitted with a request for review).  Therefore, the Court need only determine whether the Appeals Council erred in concluding that the evidence did "not provide a basis for changing the Administrative Law Judge's decision."  AR at 2.

When assessing whether the Appeals Council has erred, a reviewing court "must consider whether substantial evidence supports the ALJ's decision in light of the entire record, including the new evidence."  *Armijo v. Astrue*, 385 F. App'x 789, 797 (10th Cir. 2010) (unpublished).  The Tenth Circuit's holding in *Armijo v. Astrue* is particularly illustrative here.  In that case, as in Plaintiff's, the claimant submitted a physical RFC questionnaire to the Appeals Council, which was made part of the record.  *Id.*  The Tenth Circuit upheld the Appeals Council's denial of review, noting that "[t]he new set of limitations [were] not accompanied by any new supporting evidence . . . ."  *Id.; see also Jones v. Barnhart,* 160 F. App'x 747, 749 (10th Cir. 2005) (unpublished) ("[T]he Appeals Council did not err in refusing to reopen the case based on a letter from [a physician] who

saw [the claimant] only once and who failed to support his opinions with clinical, radiological, or medical findings.").

Here, as in *Armijo*, Plaintiff provided no evidence or medical records from Dr. Aragon that would support the findings in his RFC questionnaire. In fact, his opinion consists solely of a one-page questionnaire on which Dr. Aragon checked various boxes indicating Plaintiff's exertional limitations. *See* AR at 442. There are no notes on the page, and even the "Comments" section of the form was left blank. Given the dearth of supporting evidence for Dr. Aragon's medical findings, his opinion "provides no basis to alter the ALJ's determination that [Plaintiff] is not disabled." *Armijo*, 385 F. App'x at 797. The Court therefore declines to remand Plaintiff's case on this basis.

### 2. *The ALJ committed reversible error by failing to consider Dr. Conolly's opinion.*

Plaintiff next claims that the ALJ erred by assigning insufficient weight to the opinion of her treating psychiatrist, Dr. Conolly. As outlined above, Dr. Conolly treated Plaintiff for depression, anxiety, and PTSD beginning in September 2008. She met with Plaintiff on a regular basis, prescribed medications, and monitored her overall mental health. In September 2008 and December 2011, Dr. Conolly completed psychiatric evaluations of Plaintiff during which she assessed Plaintiff with GAF scores of 45 and 35, respectively. *See* AR at 403-405, 438-440. Plaintiff avers that the ALJ erred in failing to consider "her two assessments of GAF[, which] show her opinion that Plaintiff was

generally unable to work during the four year period, and clearly unable at the time of the hearing shortly after the GAF assessment of 35." *Doc. 24* at 7-8.

An ALJ must provide "good reasons . . . for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations omitted). The Tenth Circuit has outlined a two-step analysis for determining the weight to be given a claimant's treating physician's opinions. At the first step, an ALJ must determine whether a treating source's opinion is entitled to controlling weight. To give anything less than controlling weight, the ALJ must demonstrate that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" on the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If in refusing to give controlling weight for either of the above two reasons, the ALJ's decision is not supported by substantial evidence, and remand is required.

Even if a treating source opinion is not entitled to controlling weight, it is still entitled to deference. *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p, 1996 WL 374188 (July 2, 1996). Thus, after refusing to afford controlling weight, the ALJ must, at the second step, apply the six factors listed in SSA regulations to determine the weight to give a non-controlling treating source opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this

section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in

determining the weight we give you treating source's opinion").

The ALJ need not explicitly consider and apply each and every factor to each

opinion. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ must, however,

"make clear how much weight the opinion is being given (including whether it is being

rejected outright) and give good reasons, tied to the factors specified in the cited

regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638

F.3d 1324, 1330 (10th Cir. 2011). Here, the ALJ entirely failed to perform either step of this

analysis. In fact, the ALJ does not mention Dr. Conolly once throughout her opinion.

Without any explanation of the weight given to Dr. Conolly's opinion, the Court has no

way to properly review the ALJ's decision. *See Watkins*, 250 F.3d at 1300. Thus, the ALJ

apparently erred in her analysis of Dr. Connolly's opinion.

However, the Commissioner asserts that the ALJ did not err in failing to ascribe

weight to Dr. Conolly's opinion because the GAF scores she assigned Plaintiff were not

significantly probative in opposition to the ALJ's conclusions. *Doc. 25* at 5-6. The

Commissioner further contends that Dr. Conolly's own treatment failed to support the

level of restriction contained in her GAF scores. *Id.*

Whether the ALJ erred in failing to mention a physician's GAF score turns on

whether the evidence was "significantly probative." *Luttrell v. Astrue*, 453 F. App'x 786,

792 (10th Cir. 2011) (internal quotations omitted) ("[While] the ALJ need not discuss

every piece of evidence in the record, . . . [he must] discuss[] the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.").  In certain instances, "'GAF score[s] may be of considerable help to the ALJ in formulating the RFC . . . .'"  *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).  However, they do not always indicate that a claimant's impairment "severely interferes with an ability to perform basic work activities."  *Jones v. Astrue*, 2009 WL 1360083 (D. Kan. May 14, 2009).

The Tenth Circuit has held that an ALJ errs for failing to consider the impact of a claimant's GAF score on his ability to work where there is significant evidence of mental impairments in the record and the GAF score was determined by the claimant's treating physician.  *Givens v. Astrue*, 251 F. App'x 561, 567 (10th Cir 2007).  On the other hand, courts generally conclude that GAF scores are not significantly probative—and, therefore, need not be mentioned in the ALJ's opinion—where there is little evidence to support the score, or where the ALJ has properly rejected other opinions from the source who provided the GAF score.  *See, e.g., Lopez*, 78 F. App'x at 678 (concluding that GAF score from one-time examining physician, standing alone, was not "significantly probative" evidence in opposition to the ALJ's ultimate conclusions); *Crane v. Astrue*, 369 F. App'x 915, 920 (10th Cir. 2010) (finding that "the ALJ, for the reasons given for not accepting

[the doctor's] diagnosis, did not need to find her GAF scoring to be significantly probative.").

Here, the Court is persuaded that Plaintiff's GAF scores are significantly probative, and the ALJ erred in failing to include them in her opinion.  Plaintiff sought treatment from Dr. Conolly for more than three years, often meeting with her more than once a month.  Further, contrary to Defendant's assertions, Dr. Conolly's GAF scores were not inconsistent with her treatment notes.  Defendant maintains that Plaintiff's conditions improved because she reported that she was "getting along better" and "feeling better" in early 2009.  *See doc. 25* at 5.  However, these statements only spanned a short period of time, and Plaintiff continued to see Dr. Conolly and to suffer from her conditions thereafter.  In May 2009, Plaintiff became so anxious that she "came out in hives."  AR at 318.  Plaintiff's anxiety continued to be high in June 2009 (AR at 317), and in December 2009, she was "still depressed and anxious" and reported "sleeping 14-15 [hours a] day." AR at 396.  In 2010, Plaintiff's pain and mood were so severe that her "husband and daughter [had to] take care of [the] home."  AR at 394.  As recently as December 2011, Dr. Conolly diagnosed Plaintiff with PTSD and bipolar disorder.  AR at 440.  Plaintiff was having panic attacks on a daily basis, and Dr. Conolly noted that she experienced low energy and motivation, and even had ideas of suicide.  AR at 438.  Defendant's contention that Plaintiff's conditions were not serious is, therefore, belied by the evidence in the record.

In light of the above, the Court finds Plaintiff's GAF scores to be significantly probative, and concludes that the ALJ erred in failing to discuss them in her opinion. The Court cannot, as Defendant urges, "simply presume the ALJ applied the correct legal standard in considering [Dr. Conolly's] opinion." *Watkins*, 350 F.3d at 1301. Because the ALJ gave no indication whatsoever of the weight she assigned Dr. Conolly's opinion, the Court cannot meaningfully review the decision and must remand this case.

### 3. *The ALJ erred in affording Dr. Trujillo's opinion only "limited weight."*

Finally, Plaintiff alleges that the ALJ erred in assigning "limited weight" to Dr. Trujillo's opinion that she was "a poor candidate for routine employment . . . ." AR at 353. Plaintiff contends that the ALJ improperly discounted this opinion, from an examining physician, while affording "significant weight" to the opinions of non-examining physicians.

All medical opinions, whether or not from treating physicians, must be evaluated in light of six factors mentioned above even if the opinion is on an issue reserved for the commissioner. *Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P (S.S.A July 2, 1996) ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)"). In addition, an ALJ should generally give "more weight to the opinion of a source who has examined [a claimant] than to a source who has not . . . ." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). In affording weight to a medical

opinion, the ALJ must base his conclusions on the medical evidence in the record, and not

on own his own speculation or conjecture.  *See Langley v. Barnhart*, 373 F.3d 1116, 1121

(10th Cir. 2004).

The Court agrees that the ALJ erred in assigning limited weight to Dr. Trujillo's

opinion.  Contrary to the regulations, the ALJ did not consider the six factors in assigning

weight to this opinion.  She did not even rely on evidence in the record.  The ALJ's only

basis for affording limited weight to Dr. Trujillo's assessment that Plaintiff could not

return to work was her conclusory assumption that "if she can return to school, she ought

to be able to return to sedentary work."  AR at 25.

As an initial matter, this is an improper ground on which to assign weight to a

medical opinion, as ALJs may not make conclusions based on their own speculation or

conjecture.  Moreover, there is evidence in the record that Plaintiff's academic experience

was strikingly different from what she could expect from sedentary employment.  For

example, Plaintiff testified that when she "tried to go back to school, [she] couldn't

handle it."  AR at 55.  She therefore ended up taking only one class outside of the home,

for 50 minutes.  AR at 55.  The ALJ provides no reason, beyond her own cursory

assumption, for concluding that this type of school activity is equivalent to sedentary

work.

Because the ALJ did not properly apply the six-factor analysis in assigning weight

to Dr. Trujillo's opinion, the Court finds that remand is necessary on that basis.

## VI.   CONCLUSION

Plaintiff has demonstrated that the ALJ erred in his analysis of Plaintiff's treating and examining physicians' opinions, Dr. Conolly and Dr. Trujillo.  Therefore, I recommend that the Court GRANT Plaintiff's Motion to Reverse or Remand, and remand this case to the Commissioner for further proceedings consistent with this opinion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**